UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KENNETH RACKEMANN,

    Plaintiff,

    v.      CAUSE NO. 3:20-CV-214-DRL-MGG

JOHN GALIPEAU, ANDREW LIAW,
JANICE WEST, DOWNEY, and MOONIER,

    Defendants.

OPINION & ORDER

Kenneth Rackemann is a prisoner at the Westville Control Unit. ECF 8. Without a lawyer he filed a signed complaint setting out eight counts against twelve defendants. ECF 8. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. "[T]o state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Wexford of Indiana, LLC is a private company hired by the Indiana Department of Correction to provide healthcare in Indiana's prisons. In count one, Mr. Rackemann alleges a

> *Monell* claim against Wexford for enforcing: Health Care Records, HCSD-1.34; Access to Care, HCSD-204; Waiting List, HCSD-2.33; Medication Management, HCSD-2.17; Off-Site Medical, Hospital, and Specialty Care Referrals, A1.05, and Health Evaluation of Offenders in Segregation, HCSD-2.25, which resulted in Plaintiff being denied needed medical treatment for his left flank pain and numbness, and resulted in him receiving uncoordinated and inadequate care.

ECF 8 at 9. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). "Corporate liability exists "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Here, Mr. Rackemann hasn't explained what any of the listed policies require or prohibit. He doesn't say how they caused him to be denied medical care. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Because the complaint doesn't include facts from which it can be plausibly inferred that any of these policies caused him to receive constitutionally inadequate medical care, count one doesn't state a claim.

In count two, Mr. Rackemann alleges a

> *Monell* claim against Defendants Carter, Gipson, Hobbs, Hess, and Galipeau for maintaining a widespread practice and directives: Health Care Records, HCSD-1.34; Access to Care, HCSD-204; Waiting List, HCSD-2.33; Medication Management, HCSD-2.17; Off-Site Medical, Hospital, and Specialty Care Referrals, A1.05, and

2

> Health Evaluation of Offenders in Segregation, HCSD-2.25, to provide uncoordinated and inadequate care for Plaintiff's neuropathy related condition to his left flank.

ECF 8 at 9-10. Likewise here, the complaint doesn't include facts from which it can be plausibly inferred that any of these policies caused him to receive constitutionally inadequate medical care. Moreover, "in the Eighth Amendment context, such claims may only be maintained against a municipality." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) *citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Even if the complaint had included additional facts, it could not state a *Monell* claim against any of these individuals because they are not a municipality or a corporation. *See id.*; *Rice*, 675 F.3d at 675. Count two doesn't state a claim.

In count three, Mr. Rackemann alleges Defendants Wexford and Hess did not properly administrate and supervise medical services. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and supervisors cannot be held liable simply because they employ or supervise someone else. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. This count doesn't then state a claim.

In count four, Mr. Rackemann alleges he wasn't scheduled for timely doctor's appointments or given non-prescription pain relievers. Inmates are entitled to receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). That said, prisoners are "not entitled to demand specific care[, nor are they] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Specifically, he alleges on April 15, 2019, he told Nurses Janice West and Ms. Downey he had "severe left flank pain and numbness, as well as complaints of blood in his urine[, but] received no pain relief or doctor appointment." ECF 8 at 5. He alleges on May 5, 2019, he told Nurse West he was in pain and had blood in his urine. ECF 8 at 5. Later the same day, he alleges he told Nurse Downey he had left flank pain and numbness. He alleges neither scheduled a doctor's appointment nor gave him anything for pain. ECF 8 at 5. He alleges on June 21, 2019, he told Nurse

Ms. Moonier he had blood in his urine, but she neither scheduled a doctor's appointment nor gave him anything for pain. ECF 8 at 6.

For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However,

> medical professionals are not required to provide *proper* medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one *proper* way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. The Constitution is not a medical code that mandates specific medical treatment.

*Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks, citations, parenthesis, and brackets omitted; emphasis added). "[A] disagreement with medical professionals . . . does not state a cognizable Eighth Amendment claim." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted). It is unclear whether any of these three nurses departed from accepted professional judgment, practice, or standards on any the three listed occasions. Nevertheless, giving Mr. Rackemann the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, these allegations in count four state a claim.

In count five, Mr. Rackemann alleges Dr. Liaw denied him constitutionally adequate medical treatment. ECF 8 at 10. Specifically, he alleges, Dr. Liaw received an email on May 5, 2019, saying he had left flank pain and numbness due to complications from a previous surgery. ECF 8 at 5-6. Nevertheless, Dr. Liaw did not see him until July 10, 2019. As with the nurses, it unclear whether this delay departed from accepted professional judgment, practice, or standards. Nevertheless, giving Mr.

4

Rackemann the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, he has stated a claim for delaying his care from May 5, 2019 to July 10, 2019.

Mr. Rackemann also alleges he saw Dr. Liaw on January 21, 2020, for a chronic care visit. He says he was denied treatment for his left flank pain and numbness, but he says Dr. Liaw told him "I will address your recent kidney stone surgery and order x-ray tests to rule out current kidney stones." ECF 8 at 8. This factual allegation is inconsistent with his conclusory statement that Dr. Liaw refused to evaluate and treat his left flank pain and numbness during that visit. Based on the limited factual allegations in the complaint, Mr. Rackemann has not plausibly alleged Dr. Liaw departed from accepted professional judgment, practice, or standards on January 21, 2020.

In count six, Mr. Rackemann alleges Dr. Liaw changed his pain medication and cancelled his follow-up appointment after he returned to the prison following surgery on July 17, 2019. ECF 8 at 10. Specifically, he alleges, Dr. Liaw replaced his Narco with Naproxyn without first examining him. ECF 8 at 7. He also alleges he cancelled his follow-up appointment. Though he does not say Dr. Liaw denied him post-surgical care after cancelling his follow-up appointment, that is a reasonable inference because he next mentions seeing Dr. Liaw on January 21, 2020. Thus these allegations against Dr. Liaw state a claim. Mr. Rackemann also alleges Nurse Livers stopped him from going to the same follow-up appointment. ECF 8 at 7. Perhaps Nurse Livers implemented Dr. Liaw's orders, but it is not a departure from accepted professional judgment, practice, or standards for a nurse to carry out a doctor's orders as to the scheduling of medical appointments. Accordingly, count six does not state a claim against Nurse Livers.

In count seven, Mr. Rackemann alleges Defendants Warden John Galipeau and Grievance Specialist John Harvil ignored his grievances. ECF 8 at 11. However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of . . . grievances by persons who otherwise

5

did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Count seven does not state a claim.

In count eight, Mr. Rackemann alleges Defendants Wexford and Indiana Department of Correction Commissioner Robert Carter, Jr. denied him medical treatment for his left flank pain and numbness in violation of the Rehabilitation Act. However, "[t]he Rehabilitation Act and the Americans with Disabilities Act do not create a remedy for medical malpractice." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 486 n.6 (7th Cir. 2019). Thus the allegations that he is being denied medical care does not state a claim for a violation of the Rehabilitation Act.

In addition to seeking monetary damages against the defendants, Mr. Rackemann alleges he is not now receiving constitutionally adequate medical care for his left flank pain and numbness. He seeks permanent injunctive relief to obtain such care. As explained in a prior order,

> The Westville Correctional Facility Warden has both the authority and the responsibility to ensure that inmates are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Mr. Rackemann will be allowed to proceed on an official capacity claim against John Galipeau in his official capacity as the Westville Correctional Facility Warden for permanent injunctive relief.

ECF 11 at 3.

For these reasons, the court:

(1) GRANTS Kenneth Rackemann leave to proceed against Nurses Janice West and Ms. Downey in their individual capacities for compensatory and punitive damages for denying him constitutionally adequate medical treatment by not scheduling a doctor's appointment and for not giving him non-prescription pain relievers on April 15, 2019, and May 5, 2019, in violation of the Eighth Amendment;

(2) GRANTS Kenneth Rackemann leave to proceed against Nurse Ms. Moonier in her individual capacity for compensatory and punitive damages for denying him constitutionally adequate

medical treatment by not scheduling a doctor's appointment and for not giving him non-prescription pain relievers on June 21, 2019, in violation of the Eighth Amendment;

(3) GRANTS Kenneth Rackemann leave to proceed against Dr. Liaw in his individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment for his left flank pain and numbness by delaying a medically necessary doctor's appointment from May 5, 2019, to July 10, 2019, in violation of the Eighth Amendment;

(4) GRANTS Kenneth Rackemann leave to proceed against Dr. Liaw in his individual capacity for compensatory and punitive damages for denying him constitutionally adequate medical treatment by denying him medically necessary medication and post-surgical medical care following his July 17, 2019, operation in violation of the Eighth Amendment;

(5) GRANTS Kenneth Rackemann leave to proceed against John Galipeau in his official capacity as the Westville Correctional Facility Warden to obtain permanent injunctive relief to obtain constitutionally adequate medical treatment for his left flank pain and numbness as required by the Eighth Amendment;

(6) DISMISSES all other claims;

(7) DISMISSES Robert Carter, Jr., Monica Gipson, Thomas Hobbs, John Harvil, Wexford of Indiana, LLC, Livers, and Becky Hess;

(8) DIRECTS the clerk to request Waiver of Service from (and if necessary the United States Marshals Service to serve process on)[1] Andrew Liaw, Janice West, Downey, and Moonier at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 8), pursuant to 28 U.S.C. § 1915(d);

---

[1] It is unnecessary to serve Warden John Galipeau because he has already appeared by counsel and waived service. *See* ECF 13, 14, and 16.

(9) ORDERS Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), John Galipeau, Andrew Liaw, Janice West, Downey, and Moonier to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

September 11, 2020                                  *s/ Damon R. Leichty*
                                                    Judge, United States District Court